[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case to this court for a trial on a limited contested dissolution. The plaintiff, whose maiden name was Angela Togna, and the defendant intermarried on July 28, 1961 at Valhalla, New York. The plaintiff has resided in Connecticut for all of her life and, in particular, one year next before the date of the complaint. By stipulation of the parties, the marriage has broken down irretrievably. There are no minor children issue of the marriage, and no minor children have been born to the wife since the date of the marriage. Neither the plaintiff nor the defendant is receiving or has received support from the State of Connecticut nor have their children.
This 30 year marriage got off to a rocky start when, in the beginning of the marriage, there was an allegation by another woman that she in fact was made pregnant by the husband. Both the husband and wife went out to talk to the father of the girl in question, and it began an unhappy time for all of the parties.
Both of the parties talk about the fault of the other in the breakup of the marriage. The court finds that despite all of the allegations on either side concerning fault that fault cannot be clearly assigned to either of the parties. It is clear that the husband has a bad and sometimes violent temper by his own admission. His actions have on occasion substantially hurt the children in a physical fashion. Graphic testimony was given from one witness concerning Theresa being punched in her mid section very hard, and the wife, who came to the daughter's aid, being punched in the eye which caused a black eye. Despite all of this, the wife stayed in the marriage.
The undisputed testimony is that the wife worked for a substantial part of the marriage doing housecleaning. A lot of the money she made was not reported as income on tax returns when it suited their convenience. The question of whether the wife is able to work at the present is substantially disputed by the wife and substantially claimed by the husband. The husband claims he has proven through his testimony and that of his witnesses that the wife is presently working and is earning $350.00 per week. Although this court is satisfied that she is presently working despite her protestations to the contrary, it is not at all clear how much she is earning. It does appear to CT Page 9256 this court that a woman of her talents, and based on her testimony and appearance at trial, is capable of earning some money. It is also clear to this court that durational alimony is not called for based both on the length of the marriage and the other statutory criteria as well as uncertainty of her current earning capacity.
On the other hand, it is clear that, to a great extent, the husband's life is in order. He has another woman that he cares about and loves and has very substantial earning capacity. In addition to that earning capacity, he has substantial earnings and has earned substantially in the past.
The husband has asked for certain "secondino" unfavorable inferences to be found against the wife for the nonproduction of witnesses. The court finds that the husband has failed to sustain his burden of proof to allow the court to draw unfavorable inferences. Suffice it to say, the wife's testimony concerning some of the bank accounts, the safe deposit box, and some of the other assets and her nonownership or control of those assets was doubtful at best. It appears to the court that she was a far less credible witness than her husband. The clear facts are, however, that he is presently showing earnings on his financial affidavit of $1,057.54 per week. He earned in 1990 $71,684.00. He earned in 1989 $74,947.00. He earned in 1988 $69,493.00. He earned in 1987 $67,526.00. He earned this year on average $1,176.26 which projected out on an annual basis would be $61,163.00. He has indicated that his overtime is down from previous years.
In addition, the wife's answers to the interrogatories in some occasions can be, at best, described as inaccurate or reckless if not absolutely false.
In addition to the other assets, the wife has a substantial potential asset based on the automobile accident that she was injured in. She has one of the premier plaintiff's lawyers in the state representing her. Defendant's exhibit 25 indicates that the liability is perfect. There is a 15 per cent disability, but the question is how much pre-existed the occurrence and how much was caused by the accident. He has not evaluated this case.
The court finds it has jurisdiction. The court has listened to the parties and listened to their witnesses and reviewed all the exhibits in the case. In addition, the court has taken into consideration all the criteria set forth in Connecticut General Statutes 46b-81, assignment of property and transfer of title, 46b-82, the alimony statute, 46b-62, the attorneys' fees statute and all other relevant statutes and, in CT Page 9257 addition, the court has reviewed the financial affidavits of the parties and listened to the arguments of counsel. Accordingly, the court orders as follows:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. As a division of family assets, the husband shall quitclaim to the wife all his right, title and interest in the family homestead located at 24 Maple Lane, Shelton, Connecticut, subject to the first and second mortgages which total approximately $17,000.00 (the husband testified at trial that he paid off the first mortgage). The court finds the value of the property to be $180,000.00. In the event that the wife sells the premises within the next five years for an amount in excess of $150,000.00 gross sales price, the husband shall receive fifty (50%) per cent of all of the amount received over the $150,000.00. So that, by way of example, if it were to sell for $160,000.00, the husband would receive $5,000.00. This court is addressing gross sales price not net sales price.
3. The contents of the family homestead at 24 Maple Lane, Shelton, Connecticut, will be the property of the wife.
4. The husband shall pay to the wife alimony in the sum of $220.00 per week until the happening of the first of the following events: a. the death of either party; b. the remarriage of the wife; c. cohabitation of the wife as set out in the Connecticut General Statutes.
5. The husband's General Electric stock shall remain his and the wife shall relinquish any claims to the same.
6. All of the husband's interest in his retirement pensions at General Electric and Textron Lycoming with all the benefits shall be the sole and exclusive property of the husband.
7. The husband has an IDS IRA fund and the balance shown on his affidavit currently is approximately $7,316.00. The husband shall have that as his sole and exclusive property free from any claim of the wife.
8. The wife shall keep the bank accounts shown on her financial affidavit which includes the People's Bank savings, the IDS Financial Services, and the First Constitutional Savings Bank. In addition, she shall be responsible for all the collateral loans against those CT Page 9258 accounts, particularly the First Constitution Bank and People's Bank. She shall hold the husband harmless from any of the claims of those loans.
9. The husband's savings plan shown on his financial statement as Savings Plan P-401K in the approximate sum of $73,289.48 shall be his sole and exclusive property free and clear of any claim of the wife.
10. The trailer site campground with the wife's one third equity and trailer sitting on it will be the property of the wife, and she will take the same subject to whatever encumbrances are thereon and will hold the husband harmless for the same. The husband shall relinquish any claims to the same.
11. The husband shall continue to maintain the health insurance coverage for the wife as available through his place of employment for the maximum time allowed by law. The cost of the health insurance will be borne by the wife.
12. The wife shall retain her interest in her negligence automobile accident case free from any claims or rights by the husband, all as set forth on defendant's exhibit 25.
13. The husband will retain the 1988 Ford pickup, and the wife shall relinquish any claims whatsoever.
14. The wife shall retain the 1987 Merkor automobile, and the husband shall relinquish any claims.
15. The husband shall name the wife the beneficiary of his company term insurance in the sum of $42,000.00 as long as he is paying her alimony as set forth in this decision.
16. The husband shall make a contribution to the wife's counsel fees in the sum of $5,000.00 payable $1,000.00 per month commencing January 1st, 1992.
17. The husband shall be responsible for the CBT personal loan as shown on his financial affidavit for the First Card Gold Card as shown as on his financial affidavit and all other liabilities shown on his affidavit.
18. The wife shall be responsible for all of the liabilities shown on her affidavit.
19. The husband shall transfer his interest to the wife in the 1986 Larson 16' ski boat and trailer. CT Page 9259
20. The court contemplates that the wife will have to be employed in order to make ends meet. Accordingly, the court will not consider a material or substantial change in circumstances of the wife's earnings until she earns in excess of $18,200.00, which is the highest amount that she ever previously earned on a weekly basis projected out over the year.
EDWARD R. KARAZIN, JR. JUDGE